The next case scheduled for oral argument this morning is number 21-1377, Goldberg v. Pace University. Good morning. Please proceed. Thank you, Your Honor. May it please the court, my name is Morris Cohen, and I represent the appellant, Brett Goldberg, in this matter. Your Honor, Pace University charges six times as much for in-person tuition as they do for online coursework. As the D.C. Circuit noted in Schaeffer, the Schaeffer case recently, that provides a direct inference that the defendant, Pace University, was promising in-person coursework for in-person tuition payments. One second, in Schaeffer, the D.C. Circuit was applying the District of Columbia law, isn't that correct? That is correct. Which is different from New York law as to the requirement of an express promise, isn't that right? Well, Your Honor, the court in the New York Court of Appeals in Moss, actually, indicated that conduct can be the basis, even in an educational context, for an implied contract in fact. The Moss court said that, quote, a promise may be implied when a court may justifiably infer that the promise would have been explicitly made had attention been drawn to it. That's Moss at 94. How do you square that with the cases that talk about specific, precise promises? Well, Moss, of course, is the New York Court of Appeals, so the Moss, we would rely on the Moss opinion. I'm sorry, but is Moss in the educational context? It was a professor, yes, in an educational context. It wasn't a tuition, it wasn't a student, was it a student tuition refund case of any kind, or the question as to what the student is entitled to as a result of the promises made in the materials? Well, no, Moss was actually a professor, so in university, but the same principles apply. Contract law should be applicable for the professor or for the student. I would also note that, aside from the fact that Moss... Except that the New York Court has spoken in the context of educational malpractice claims, which involve a different kind of relationship than the university has with its employee professor, isn't that right? Yes, but there's no educational malpractice claim at issue here. That was dismissed and that wasn't appealed. I will note, though, that even if we want to go to promises and the statements in the record, even though, of course, that we would rely on Moss, there are multiple statements in the record which reflect that in-person tuition was contemplated. There are multiple statements, for example, on A13, indicating that all students trained side-by-side. Actually, could you hang on? I found it confusing in your brief because I didn't think you always differentiated between promises that were made with respect to the classes and the promises made with respect to the rep season and the process lab, which seemed to me potentially quite different. And I didn't see in the complaint allegations about the particulars of the classes that were switched from in-person to remote. So in your description right now, I would ask that you be specific about when you're talking about side-by-side learning, which exact part of the program are you referring to? Sure, of course, Your Honor. Thank you. I would note that the rep season and the process lab both lend credence to the fact that the entire program was in-person. I may note that this is an acting program. An acting program can only be in-person. You can't have an acting program by Zoom. If we would relate, for example, to A89, a picture from the catalog materials of the actor's studio and its two people together, that is not something that you can convey via Zoom. Isn't that, just as you just stated it there, that sounds to me like an educational malpractice claim, which I know is not an issue because that wasn't how Judge Engelmeyer ruled. And it's not on appeal. But if you want us to conclude, sitting here, that acting classes have to be in-person, aren't we second-guessing the educators? No, I'm not saying that acting classes have to be in-person. I'm saying, I am to some degree, but I'm also saying that that's what was promised and expected by the parties. All of the materials indicate and would provide the inference. And, of course, this is on 12B6. All the inferences should be in the defendant's, in the defendant's. If the district judge did find in your favor, didn't he, with respect to the rep program and the process lab, at least that there was a sufficient allegation of promise, the dismissal there was based on the fact that Pace had the right to defer it and any complaint about that was not quite right. Now I understand what has happened, but the dismissal was without prejudice, so you can always plead that now. Well, on the rep season, yes, and the process lab, but not on the educational aspect of the online coursework. Well, that's why I think we need you to focus on that specifically. I thought as soon as you started to answer Judge Carney's question, you alluded to the rep and the process lab. But take us to the program generally then. Yes, sure. If we may refer to the statement that the, quote, all MFA black box studios, that's at A13 of paragraph 27, the facilities, black box studios, were to be expected. There was, quote, all students trained side by side. Sorry, but were to be expected language, is that in the materials? I'm sorry? You ended that reference to the black box studios with were to be expected. Is that a quote from the circular or the brochure? Oh, I'll quote precisely. Quote, all MFA black box studios for professional training are designed and equipped according to state of the art standards. Is that not true? But that wasn't provided to our client. Is there language? I mean, it's an odd task, but it seems that the cases look for language that talks about the specific promise of provision of various manners of teaching or facilities and the like. Do you have that language here? Sure. Well, various cases like Britton and Fletcher relied on the fact that facilities were provided and expected and the inference were that they were expected. But if we want to look at language, we talk about students training side by side, face-to-face encounters, pictures of students together, as we had said. Bradley Cooper refers to our actor studio as a sacred place. It's referred to as a repertory company, which by definition, a repertory company is a company of actors that are providing acting. Could you clarify, are we talking about the, which program are we talking about right now? We're talking about Mr. Goldberg's program, which was a playwriting program. But there's the classes, there's the rep season, and there's the process lab. There are three different components of your complaint as I read it, and I found very little description in the complaint about the classes. And as Judge Radji has pointed out, the rep season and the process lab claims were found unripe, and it seems that the rep season, in fact, your client was able to have his play produced on four occasions after the complaint was filed. So they stand in somewhat different postures. So again, I would ask you to be specific. What classes exactly were scheduled, and where do you describe them in your complaint, apart from the rep season and the process lab, so we can see how the material you are pointing to bore on those classes? Yes, Your Honor. There was, in the appendix, we provided a schedule of classes, and our position is that the classes were all meant to be in person. There wasn't any indication or expectation that the classes would have been online. Where is there a promise that that would be the case? I mean, there's actually language that suggests that that may not be the case. So where is the promise language? Sure. One example is A90. Students perform, write, and direct. Writing, of course, is not just the provision of the play. Students perform, write, and direct in a small, full-time class setting, working alongside each other intimately, building connections. Working alongside each other indicates that they were meant to be in person, not via Zoom. Likewise, on A26 and so forth, we indicate the nature of the various classes, playwriting, directing, and so forth, paragraph 117, and so forth. We also provide lists of the classes. The point that I'm trying to make is that the inference, at least, should not be taken against Mr. Goldberg. All inferences should be taken in his favor. He indicates that. But I'm still looking for, we're talking about the spring semester, where, in fact, just two months of the spring semester in 2020. And when you take out the rep season and the process lab, he must have been inscribed and enrolled in some specific classes in that period. And you're complaining that there was a specific promise that those classes, too, would be in person. But I don't see allegations to that effect with any specificity in your complaint. And maybe I've just missed something that you have alleged. But perhaps you could point me to the paragraph describing in what classes he was enrolled that were canceled, as to which a disclaimer was not applicable, and as to which a specific promise of in-person learning was made. Yes, Your Honor. I would refer the court to A226 and 227. In particular- 226 and 227? Yes, Your Honor. I have A226 and 227 in the appendix. Okay, great. And I would indicate that there are a series of classes listed. For example, voice and speech. That's an in-person class that he was enrolled in. Improvisional movement. To improvise and to move, you have to be in person. I'm just quoting his- I mean, I'm not suggesting that they're not normally taught that way, but I'm not sure it's apparent why they would have to be. Well, I'm saying that was the promise. When he enrolled for this course- Where is the promise? You're saying it's implicit in the nature of the class, and I am not-I'm suggesting to you that that is not apparent. Well, again, I would say that inferences should be taken in his favor. That a class on movement would have to have the individuals in the room together watching each other move and moving with respect to each other. On Zoom, for example, this particular image that I had held up, you can't move this way on Zoom. That just- Sure. I think that returns to my question, which is you want us to second-guess the educators who, I gather, decided to conduct dance and voice classes and acting classes by Zoom, and you say we should conclude, despite the absence of a specific promise that those be in person, that they must be in person. Is that right? No, I'm concluding that at this stage of the proceedings, there's more than enough to infer that there was an expectation and a promise between the parties that when Mr. Goldberg paid full-time tuition for full-time classwork, all of his classwork, that that's what he was going to get, and that it only supports the fact that various types of courses would only be expected or would normally be expected to be in person. Improvisational movement, voice, speech, acting, and so forth. These are the types of things, including the process lab and the prep season, they all show the same thing. One after another consistently show that this was meant to be an in-person type of arrangement. That's what he was paying for at six times the normal rate. That's what he expected, and I think if you were to ask PACE before the pandemic whether you're in an in-person program, they would have said, yes, you're in an in-person program. They wouldn't have said, no, no, this is an online program. In fact, if PACE, for example, if we took the pandemic out of this, if PACE were to say in the middle of the semester, we're switching everything to online because we've decided to rent out the campus to Amazon, I don't think anyone would find that reasonable. You've brought in the concept of sort of take out the pandemic and what would be reasonable, so shouldn't then the question be, well, what were the party's expectations and what was promised in the face of a contagious pandemic? Shouldn't we infer that PACE would provide classes in a safe environment? If we're starting to infer promises, don't we have to step back and look more broadly, or I suppose look more specifically at the context of what the party's assumptions would have been in the face of COVID? Only if there was a promise in that respect. There you need a specific promise. I'm sorry? You need a specific promise there, but otherwise we should infer. Well, a specific promise with respect to a pandemic. I would note, for example, that a specific institution like PACE has to be registered for distance learning. They weren't registered for any of these courses for distance learning as far as we know. That inference indicates that this was an in-person program. They can't be providing something that New York State does not allow them to provide. When Brett Goldberg enrolled in this particular program, he was enrolling in a program approved by New York State. There was no expectation that he was going to be now in a program that violated the requirements of New York State. All right, Mr. Cohen. Thank you. You've reserved three minutes of rebuttal. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the Court. Jonathan Fellows, Bond, Shenick and King for PACE University. Your Honor, as you all know, and there are other cases pending before the Second Circuit about tuition refund claims. As you all know, there is a wave of litigation in the spring of 2020 following the pandemic and the closure of campuses under the order of State of New York. Most of these cases were filed in the federal courts that come up to the Second Circuit. The courts weren't painting on an empty canvas. And the questions from the court make clear the court is familiar with the cases I'm about to talk about, which is, for 60 years, the New York Court of Appeals has created a common law and defined the relationship between a student and a university, beginning with Carr v. St. John's, continuing with Tedeschi v. Wagner College, and on with Moss v. Cornell. Those cases have all said, hands-off academic decisions. What they also say is there is an implied contract between the student and the university. The fundamental provision of which is the university will deal in good faith with its students. And the corollary to that is, if you have a specific promise in the bulletins, catalogs, and circulars, that specific promise may be subject to a breach of contract claim. And what the plaintiffs in these cases are trying to do is cobble together statements in other documents, recruiting documents, statements by Bradley Cooper about how great this program was for him, and somehow create a specific promise. But the New York Court of Appeals, as followed by this court repeatedly, and most notably in Papalino v. Albany College of Pharmacy, and in many district court cases long before the pandemic, is these promises have to be in the catalog, bulletins, and circulars. And that has a specific meaning in higher education. Most schools still publish a catalog each year, and it sets forth the academic regulations and the course descriptions. And that's what the New York Court of Appeals has said. If you can find a specific promise in those documents. So, counsel, I suppose my hypothetical is the exact same case, but no COVID. So, all of the same cobbled together language being pointed to, that you say doesn't meet that specific language requirement, specific promise requirement. And the student shows up on day one, and the university announces, we've decided to go all remote for whatever reason, but not, you know, because we say so. There's no claim to be made there by the student? Well, the hypothetical presented by my opponent was, we rented the campus to Amazon. Yeah. Software programs. Your Honor, the first thing I said, Your Honor, is that the fundamental thing the Court of Appeals has said is, universities must deal in good faith with their students. So, all the same facts, student shows up, we've just decided. We just feel like it. We just feel like it. You know, and the faculty, they don't really like coming on campus. Is there a claim there? There might be, because in my mind, that hypothetical would show bad faith by the university. What happened here, Your Honor, is we had a worldwide pandemic. The State of New York ordered us to shut down, and we did so. And, Your Honor, there's a key allegation missing in this complaint, and in all of the complaints that I've been working on. And that allegation would be, instruction ceased. Instruction did not cease at Pace. In fact, it continued uninterrupted with the same faculty and the same syllabuses. Except in this case. The rep season and the process lab. Pace didn't say. In response to my hypo, because you said yes, there might be a claim, because that would show bad faith. So that's not a search for specific promissory language. That's more of a, I'm not sure how that fits with a breach of contract claim to look for bad faith. So you're saying the approach that we see in all of these cases that I've read too many of is not the right approach. The right approach is not to go about looking for specific promise language, but to ask sort of in the body of material that's provided. Did the university act in good faith or bad faith? Your Honor, I don't believe you correctly stated what I'm arguing. The search for specific promise in the catalog, or the blue book, or whatever you call it at your school. That is what is required in this case, and in all the tuition cases that arose out of the state-ordered shutdown. The hypothetical you posed, Your Honor, that would be prototypical bad faith in my mind. If we just said, well, we don't want to be a college anymore. We want to be a campus for Amazon, but we're going to keep your money. That would be bad faith, and I believe if I were pleading for the plaintiff, I could somehow plead a cause of action. No such allegations exist in this complaint or in any of the other complaints I've seen. What did Pace do in this case? They continued instruction in the classroom courses that could be conducted by remote means, uninterrupted, Your Honor. And they took a look at what this program that Mr. Goldberg was in really consisted of. And an important part of the program, as plaintiff repeatedly states, is the process lab. He holds up pictures. Those are from the process lab or rep season, which Pace did not say, we're going to do remotely. They said, we cannot do those remotely. We will provide that to you. And the lower court specifically said, that case isn't ready. So let me ask just a question. So I gather that the rep season was, in fact, then occurred later on. What happened with the process lab? Does the record make it clear? The process lab was incorporated into rep season. At the time of the state ordered shutdown, there were approximately five sessions of the process lab left. I mean, I think Your Honor before said two months. In fact, there was about six weeks left of the academic year. And most of that was going to be completely devoted to the rep season. And when the rep season was conducted, the process lab courses were incorporated into it. And if Mr. Goldberg feels Pace didn't deliver the rep season it promised, he can sue that case. That's what Judge Engelmeyer said. You can sue that case. The problem was, which is, Pace did deliver the rep season and did deliver the process lab. And he's going to have to prove that somehow they didn't. Or that it was inadequate. It was not the equivalent of the rep season process lab that was expected. And Your Honor, if that's going to be a claim that they sue, and obviously we're getting ahead of ourselves. But if that's a claim they sue, Your Honor, and they're saying the quality of the program wasn't what I expected, then I would be saying that's an educational malpractice claim. The lab happened. Mr. Goldberg's play was produced. What he was promised by Pace was instruction in his chosen courses. That continued in the spring of 2020. So the allegations as to specific courses are not in the complaint, but he's pointed us to enrollment in a voice and speech class and improvisational movement. As well as, I guess, play writing and a writing workshop. Is there any question about whether those classes were suspended, where the instruction was suspended? Your Honor, the pages of the record that he pointed to are Mr. Goldberg's transcript and read the names of the courses. There are no allegations in this Second Amendment complaint of that movement course either wasn't continued or that it was continued in a way that wasn't meaningful. And so the answer to your question, Judge, was there are no allegations in the complaint of I didn't get that instruction in movement or voice. And that's what's necessary in the complaint is instruction in my chosen courses ceased. It didn't cease. It continued. And that's what Pace was obligated to do. And I go back to Pace operated in good faith. Can I ask, would you say that there's an under the analysis of these cases looking at the various materials for specific promises? Is there an implied contract as to which classes will be in person? Is there a way of knowing from the materials? Does it cover that question of which classes will be in person? Your Honor, Pace made an academic judgment that the rep season and process lab could not continue in a remote format. So they made that judgment. And so plaintiff got that program when it could be delivered. And I would also note, quoted in our brief, Your Honor, is the disclaimer section of the catalog, which clearly says if circumstances prevent use of the campus for any reason, classes might not be completed on schedule. And that's exactly what happened here. But to answer your question, Your Honor. So again, setting aside the rep season and process lab, the other classes, would you say there's an implied contract that covers the extent to which classes should be in person? I would not, Your Honor. Then why isn't an unjust enrichment claim appropriate for that question? No, Your Honor, because unjust enrichment requires two things that the lower court found didn't exist. One is that there's some inequity. There's no allegation here that somehow Pace didn't pay its faculty, didn't incur the normal expenses of educating its students in the second half of the 2020 semester. Pace didn't pocket some money and not provide instruction. So, and the question is, not is there an implied contract. The question is, does that implied contract include an express term of in-person instruction? And it does not. It's sort of a level of generality question, right, as to whether the contract analysis entirely displaces the unjust enrichment analysis. Your Honor, if Pace made a judgment to continue a course, and it was continued with the same faculty providing the instruction, and Mr. Goldberg earned the credit and graduated with his degree, then all the court would be doing if it took on that claim as a breach of contract is second-guessing the academic judgment of the university that that instruction could continue and allowing Mr. Goldberg to say, but it wasn't good enough in my view, which is what New York has consistently said is educational malpractice. And in the Papalino case, this court said, after repeating the standard law in this area that we've been talking about, it said, and yet can't create a breach of contract claim that is essentially a way around the educational malpractice doctrine, Your Honor. All right, thank you very much. Thank you, Your Honors. Mr. Cohen, you have three minutes. Thank you, Your Honor. I would note that the catalog does indicate in-person. It says on A59, it says that in the third year, the three groups apply their knowledge and work together as an ensemble. You can't work together as an ensemble if you're going online via Zoom. The whole third-year program was meant to be an ensemble. Is that not a reference to rep season or process lab? Well, it says, if I continue to quote, to create and perform in a professionally produced repertory season that is presented to the industry and the public. Creating doesn't mean providing the rep season. Again, the emphasis should be for Mr. Goldberg that when he's having these classes, preparing and talking and so forth with other students, directors and so forth, that that was meant to be in person. I'm not sure that's so obvious to me. I mean, I understand that you might think it was easier to talk in person, but a group of students can talk by Zoom. I mean, that's what the technology makes possible that wouldn't have been possible 20 years ago. Well, Your Honor, that would be a factual question, not one for this stage of the proceedings. No, but you have to point to a specific promise, and you're saying that a promise about collaborative work and discussing things together is an explicit promise of in-person exchanges, and I'm suggesting to you that that's not apparent. Why is that not correct? I'm saying that the statements and the history of this program and the history of college universities altogether provide that inference. The conduct of universities has for hundreds of years been in person. Online is an exception. True, it's a new exception, but every time that online experience is being provided by a university, they expressly tell the students. We've shown an example of online coursework by Pace. It's expressly indicated to be online. If Pace wanted to, they could have put in a disclaimer. They could have said we reserve the right to move this all online. They could have said some of these courses will be online. None of that is in the record. Taking inferences from Mr. Goldberg, he understood and Pace promised a completely in-person experience. They did not deliver that experience, and this good faith standard that he's working on is not workable. The fact is that if the pandemic wasn't here, nobody would disagree, in my respectful opinion, that this was meant to be in person. They charged him in person. They should have given him in person. If they switched by giving the campus to Amazon, if they switched by changing to software, it doesn't say anywhere in the catalogue materials that human beings have to teach, but obviously the conduct of this program and the conduct of hundreds of years of universities indicate that professors were supposed to be teaching. There are certain contexts that we have to look at, and giving the inferences to my client at this stage at least require that the case not be dismissed. At trial, it can be argued what the circumstances were, what was equitable, what was not equitable, but looking at this from the perspective of all inferences being taken in favor of the non-movement, all inferences in favor of Mr. Goldberg were that he had paid for, enrolled in, expected an in-person program like had been done for decades before, and he wasn't given that. And because of the fact that he paid one thing, very high, six times, but he was given something else, one-sixth of that, that is the inequity, and that's the unjust enrichment, as Your Honor mentioned. You can't pay for a Mercedes and be given a smart car and say, well, the pandemic, you know, that's the way it goes. There's a vast difference in what's the value of those two things. An $80,000 Mercedes and a $15,000 smart car, or $90,000, that's a six times difference. You're paying for one thing, you're getting something else. Is it correct that this was for those two classes over six weeks, and that ultimately the rep and the process lab were delivered? No, that's not correct. The process lab was not delivered. Those five process lab classes never made up. The rep season was not adequate. All of the other classes- And are you free to file a complaint to that effect, given how the district court treated it as unripe? Well, yes, but we're appealing on the issue of online versus in-person, and that's a vast gulf. As the D.C. State Court mentioned, there's a vast gulf between the two. Again, in Washington and New York, the expectations of what students are getting, they're not so different between the two. The law may be different, though. I'm just saying that the conduct is part of the law in New York, and the historical conduct would be part of it. Thank you very much. Thank you for your arguments. We'll reserve decision. Thank you all. That concludes our calendar for this morning. The clerk will please adjourn court. Court is adjourned.